UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OFF LEASE ONLY, INC.,

     Plaintiff,

v.                                  Case No. 6:18-cv-1555-Orl-37DCI

LAKELAND MOTORS, LLC,

     Defendant.
_____

## ORDER

Before the Court is Plaintiff Off Lease Only, Inc.'s ("**Off Lease Only**") *Daubert* Motion to Strike Defendant Lakeland Motors, LLC's ("**Lakeland Motors**") Expert Witness. (Doc. 48 ("**Motion**").) Lakeland Motors opposes. (Doc. 51.) On review, the Motion is denied.

## I.    BACKGROUND

Off Lease Only sued Lakeland Motors alleging Lakeland Motors' billboards infringe Off Lease Only's copyright and infringe and dilute its trademark. (*See* Docs. 2, 41.) Lakeland Motors hired an expert, Robert A. Peterson, Ph.D., to conduct a secondary meaning survey assessing the fame of Off Lease Only's mark—a requisite element for the dilution claims. (Doc. 51, ¶¶ 2, 10; Doc. 51-1, pp. 2–10 ("**Peterson Report**").)

Dr. Peterson investigated the secondary meaning of Off Lease Only's "DON'T PAY MORE" mark by surveying whether "a targeted universe of individuals who purchased or considered purchasing a used vehicle from a used car dealership in the last

five years uniquely associate the logo/slogan with one company generally, and specifically with OFF LEASE ONLY, INC." (Doc. 51-1, p. 3.) The Peterson Report details his methodology and states he followed "accepted research procedures, methods, and techniques." (*Id.* at 5–9.) Dr. Peterson reviewed Off Lease Only's complaint, Lakeland Motors' answer and affirmative defenses, and both parties' websites. (*Id.* at 5.) He then administered a questionnaire on the Internet to a national sample of 475 individuals and a Florida sample of 250 individuals—all part of the targeted audience. (*Id.* at 3, 5.) Participants saw either the "DON'T PAY MORE" mark or the control "ALWAYS SPEND LESS" mark and indicated whether they associate the mark with a company and if so, which one. (*Id.* at 5, 7–8.) From the questionnaire results, Dr. Peterson found "strong evidence that the logo/slogan 'DON'T PAY MORE' does not possess any secondary meaning among members of the targeted universe either nationally or in Florida." (*Id.* at 4; *see also id.* at 9–10.)

Off Lease Only moves to exclude Dr. Peterson's testimony under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), arguing Dr. Peterson's survey methodology was unreliable because he surveyed an improper universe. (*See* Doc. 48.) Briefing complete (*see* Doc. 51), the matter is ripe.[1]

## II.    LEGAL STANDARDS

In its gatekeeping role, a district court is tasked to ensure that juries hear "expert"

---

[1] Off Lease Only requested an evidentiary hearing on the Motion. (Doc. 48, p. 4.) But Off Lease Only didn't state why it wanted an evidentiary hearing (*see id.*), and a hearing isn't necessary to resolve the Motion.

opinions that satisfy these requirements:

> **Qualifications**—a witness that is "qualified as an expert by knowledge, skill, experience, training, or education" may testify as to his opinions of scientific, technical, or other specialized knowledge (Fed. R. Evid. 702) ("**Qualification Requirement**");

> **Reliability**—the testimony is "based on sufficient facts or data" (Fed. R. Evid. Rule 702(b)) and "is the product of reliable principles and methods" (Fed. R. Evid. Rule 702(c)), which the witness applied "reliably . . . to the facts of the case" (Fed. R. Evid. Rule 702(d)) ("**Reliability Requirement**"); and

> **Helpfulness**—the testimony will help the jury to "understand the evidence or to determine a fact in issue" (Fed. R. Evid. Rule 702(a)) ("**Helpfulness Requirement**").

*See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 965–67 (11th Cir. 2013).[2] The Court must abstain from credibility determinations and any merits assessment of an expert witness's opinion—matters exclusively reserved to juries—and must instead narrowly focus on whether the proponent of the expert witness has established the Qualification, Reliability, and Helpfulness Requirements. *See Daubert*, 509 U.S. at 594–95; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 155 (2000).

To determine whether the Qualification Requirement is met, "courts generally look to evidence of the witness's education and experience" and determine whether those qualifications and expertise sufficiently "fit" with "the subject matter of the witness's proposed testimony." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711

---

[2] While unpublished opinions are not binding precedent, they may be considered persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

A determination on the Reliability Requirement involves several considerations that vary depending on the opinions and testimony, including these well-known *Daubert* factors:

> (1) whether the expert's theory can be or has been tested;
>
> (2) whether the theory has been subject to peer review and publication;
>
> (3) the known or potential rate of error of the particular scientific technique; and
>
> (4) whether the technique is generally accepted in the scientific community.

*Daubert*, 509 U.S. 579; *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). These "factors are only illustrative and may not all apply in every case." *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005) (citing *Frazier*, 387 F.3d at 1262). The district court has "wide latitude in deciding how to determine reliability." *Id.* (citation omitted).

Finally, the Helpfulness Requirement turns on:

> the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*See* Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules (citation omitted).

The proponent of the expert opinion must establish admissibility. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)); *see also Frazier*, 387 F.3d at 1260. The proponent need

not prove that the opinion is scientifically correct, just that it is reliable and helpful. *See*

*Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002) (citation omitted).

If the proponent does so, then the court should permit the proponent to elicit testimony

from the expert witness about his or her reliable opinions and allow the jury to fulfill its

role of determining the weight to accord that testimony. *See id.* at 1278–79. The court's

limited gatekeeping role "is not intended to supplant" presentation of contrary evidence

or cross-examination. *See United States v. Ala. Power Co.*, 730 F.3d 1278, 1282–85 (11th Cir.

2013) (citation omitted). Once the proponent satisfies the minimum threshold for

admissibility, the jury must decide the parties' remaining reliability and relevance

disputes—preferably based on the litigants': (1) presentation of contrary evidence, such

as testimony from the litigant's own expert witness; and (2) use of cross-examination and

appropriate legal argument. *See id.*

### III. ANALYSIS

Off Lease Only contests the Reliability Requirement: Dr. Peterson's survey lacks

trustworthiness and reliability because he used improper national and Florida sample

universes. (Doc. 48.) Off Lease Only argues surveying individuals where Off Lease Only

has no auto dealerships is unfitting and scientifically unacceptable. (*Id.* at 2–4.) Instead,

Dr. Peterson should have administered the questionnaire only where Off Lease Only has

dealerships—Orlando, Miami, Fort Lauderdale, and West Palm Beach. (*Id.*) Lakeland

Motors counters that Dr. Peterson properly surveyed a national and Florida sample to

assess the secondary meaning (and fame) of Off Lease Only's mark as necessary to defend

against the federal and state dilution claims. (Doc. 51, pp. 4–12.) And issues with Dr.

Peterson's targeted universe should go to the weight, not admissibility, of his opinions. (*Id*.) Lakeland Motors has the better argument.

"Surveys and customer questionnaires are admissible, if they are pertinent to the inquiry, upon a showing that the poll is reliable and was compiled in accordance with accepted survey methods." *Firefly Dig., Inc. v. Google, Inc.*, No. 6:10-0133, 2011 WL 6160222, at *2 (W.D. La. July 7, 2011) (quoting *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1054 (5th Cir. 1981)).[3] To assess survey reliability, courts have looked to the Federal Judicial Center's Manual for Complex Litigation, which instructs that "sampling methods must conform to generally recognized statistical standards" and provides factors to consider. *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *10 (M.D. Fla. Aug. 31, 2017) (quoting Manual for Complex Litigation, § 11.493 Sampling/Opinion Surveys (4th ed. 2004)); *see also Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-Civ-COOKE/TORRES, 2016 WL 7156092, at *2 (S.D. Fla. Dec. 8, 2016). "Relevant factors include whether (1) the population was properly chosen and defined; (2) the sample chosen was representative of that population; (3) the data gathered were accurately reported; and (4) the data were analyzed in accordance with accepted statistical principles." *Edmondson*, 2017 WL 10591833, at *10. That said, typically "alleged technical deficiencies affect the survey's weight . . . and not its admissibility." *Ass Armor, LLC*, 2016 WL 7156092, at *3 (quoting *Jellibeans, Inc. v. Skating*

---

[3] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Clubs of Ga., Inc.*, 716 F.2d 833, 845 (11th Cir. 1983)). "Flaws in methodology must be 'serious and pervasive' to justify exclusion under Rule 702.'" *Id.* (quoting *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013)).

Dr. Peterson properly chose and defined representative survey populations based on the complaint. About its business and marketing efforts, Off Lease Only alleged:

> 7.     OFF LEASE ONLY is the largest independent Used Car Dealership by volume in the United States. Its primary paradigm is purchasing formerly leased vehicles at auction and reselling them to the public at its dealerships in Orlando, West Palm Beach, North Lauderdale, Miami and online at www.Offleaseonly.com.

> 8.     OFF LEASE ONLY has a far-reaching footprint in the used car sales market, primarily due to the extensive marketing efforts via online postings, radio spots, and billboard advertisements.

> 9.     OFF LEASE ONLY spends a substantial amount of money on marketing each year to brand its business and to create foot traffic into its dealerships and on its website.
> . . . .

> 18.     OFF LEASE ONLY has spent millions of dollars in media advertising to promote and protect its brand in Florida and Worldwide, and assertively protects its famous marks.

(Doc. 41, ¶¶ 7–9, 18.) For its dilution claims, Off Lease Only alleged its "DON'T PAY MORE" mark is "famous and distinctive." (*Id.* ¶¶ 40, 54.)

From the complaint, Dr. Peterson selected an appropriate targeted universe and survey samples using "accepted research procedures, methods, and techniques." (*See* Doc. 51-1, p. 5.) His targeted universe included adults "who had purchased a used vehicle from a used car dealership or considered purchasing a used vehicle from a used car dealership in the last five years." (*Id.*) Dr. Peterson then created non-overlapping national

and Florida samples from that targeted universe—475 individuals nationwide and 250 Florida residents. (*Id.*) These samples follow Off Lease Only's allegations about its business and marketing and include possible customers of Off Lease Only and Lakeland Motors. *See Firefly Dig., Inc.*, 2011 WL 6160222, at *4 (finding that the proper universe for a secondary meaning survey "is not necessarily limited to the potential buyers of [the plaintiff's] product. Instead, the proper universe would be broader and include the likely purchasers of both parties' products."). They also track Off Lease Only's federal and state trademark dilution claims. *See* 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."); Fla. Stat. § 495.151(1) (noting Florida's anti-dilution statute concerns "a mark that is famous in this state").[4]

Given Off Lease Only alleges it conducts business at its stores and online, advertises in Florida and worldwide, and seeks relief for state and federal dilution claims that require its mark is famous among the general populations of Florida and the United States, Dr. Peterson's nationwide and Florida samples were appropriate—even necessary—for Lakeland Motors to defend itself. (*See* Doc. 41); *see also Firefly Dig., Inc.*, 2011 WL 6160222, at *3–5 (finding a secondary meaning survey reliable where the

---

[4] Cases applying these statutes support the same. *See, e.g., Holding Co. of Vills. v. Little John's Movers & Storage, Inc.*, No. 5:17-cv-187-Oc-34PRL, 2017 WL 6319549, at *3–5 (M.D. Fla. Dec. 11, 2017) (discussing that a federal dilution claim requires the marks "are famous among the general population of the United States" and a Florida dilution claim requires the marks "are famous among the general population in Florida"); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 222 (D.D.C. 2014) (noting that "[a] survey of nationwide consumer awareness . . . might have demonstrated the fame necessary to sustain its [federal] dilution claim").

targeted universe was selected based on allegations in the plaintiff's complaint and the plaintiff's representations to the public); *cf. Zatarains Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983) ("The authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning." (citations omitted)), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111 (2004).

Off Lease Only contends any reliable survey would have been limited to where it has dealerships and does most of its advertising (*see* Doc. 48, pp. 2–4), yet it hasn't supported this geographic restriction.[5] Not only is this proffered population undermined by the fame requirements for state and federal dilution claims as discussed, but also the cases Off Lease Only relies on are inapposite. For example, Off Lease Only relies on *American Home Products Corp. v. Barr Laboratories, Inc.*, 834 F.2d 368 (3d Cir. 1987), but that case addressed the appropriateness of survey questions assessing likelihood of consumer confusion, not the population used for a secondary meaning survey. *Id.* at 371. Further, the court did not exclude the survey, it merely gave it little weight. *Id.* Off Lease Only

---

[5] Beyond this, Off Lease Only challenges the survey because "there is no way for one to know the geographic location of the Florida residents, which makes any opinion based on this survey untrustworthy." (Doc. 48, p. 4.) But this ignores the statewide fame requirement of a claim under Florida's anti-dilution statute. *See* Fla. Stat. § 495.151; *Holding Co. of Vills*, 2017 WL 6319549, at *3–5. Off Lease Only also asserts, without support, "it cannot be an accepted method to obtain results of marketing a brand when areas in the marketing zones are mixed in with areas where OFF LEASE ONLY did not have an advertising campaign." (Doc. 48, p. 4.) Yet it's unclear what "zones" it didn't have an advertising campaign as the complaint says it has "extensive marketing efforts via online postings" and "has spent millions of dollars in media advertising to promote and protect its brand in Florida and Worldwide." (*See* Doc. 41, ¶¶ 8, 18.)

also relies on *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358 (D.N.J. 2002), where the court excluded a survey based on definitional problems and an improper survey universe. *Id.* at 370–72. There, however, the survey didn't mirror market conditions as it surveyed ultimate consumers rather than distributors, yet distributors were the only ones possibly exposed to the mark. *Id.* at 371–72. As the need for Off Lease Only's proffered narrow survey population is unsupported, Lakeland Motors has met its burden of establishing Dr. Peterson's survey methodology was reliable and thus admissible based on the complaint.

Even if there were problems with Dr. Peterson's survey samples, exclusion of his testimony wouldn't be warranted. "Objections to the technical validity of the survey properly go to the weight to be accorded to the survey rather than to its admissibility." *Edmondson*, 2017 WL 10591833, at *10 (citations omitted); *see also J & J Snack Foods*, 220 F. Supp. 2d at 369 (citing cases). "However, when the deficiencies are so substantial that they render the survey's conclusions untrustworthy, the court should exclude the survey from evidence." *J & J Snack Foods,* 220 F. Supp. 2d at 369. "While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *See Edmondson*, 2017 WL 10591833, at *10 (citation omitted). Here, any issues with the geographic scope of the survey populations throughout Florida and the United States would not render the survey fatally flawed; that error would go to the weight, not admissibility, of Dr.

Peterson's opinions.[6] *See, e.g.*, *Edmondson*, 2017 WL 10591833, at *11 ("[C]riticism of a . . . defined relevant population or universe or a representative sample of prospective customers does not render the survey fatally flawed."); *Firefly Dig., Inc.*, 2011 WL 6160222, at *4 ("The jurisprudence is clear that 'an imperfect universe is not fatal to the surveys' admissibility.'" (citation omitted)).

Because Lakeland Motors met its burden of establishing the Reliability Requirement, Dr. Peterson's findings and testimony are admissible.[7] *Cf. Firefly Dig., Inc.*, 2011 WL 6160222, at *5 (declining to exclude Dr. Peterson's secondary meaning survey and testimony in another case in part because he "used a reliable approach, based on the information set forth in [the] complaint and [the plaintiff's] representations to the public" and his methodology was "not so flawed" to render the survey, report, and testimony inadmissible).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff Off Lease Only,

---

[6] The same is true to the extent Off Lease Only challenges (again without support) the sizes of the populations sampled. (*See* Doc. 48, p. 3; Doc. 51, pp. 10–11); *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 632–33 (S.D.N.Y. 2007) (discussing that sample size is one factor affecting reliability and probative value and "is not dispositive on its own").

[7] Off Lease Only also argues the results of a survey administered in places where it did not have an advertising campaign "create a situation where the unfairly prejudicial effect on a jury is substantially outweighed by the probative value of the opinion." (Doc. 48, p. 4.) But given Off Lease Only's claims and Dr. Peterson's detailed methodology, any prejudice based on the survey sample does not outweigh its probative value. And to the extent Off Lease Only challenges the Helpfulness Requirement, because Lakeland Motors has satisfied the Reliability Requirement, Dr. Peterson's testimony would be helpful to the jury given the dilution claims presented. *See* Fed. R. Evid. 702.

LLC's *Daubert* Motion to Strike Defendant's Expert Witness (Doc. 48) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 19, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record